**In the Matter of the Application for the DISCIPLINE OF Clayton E. PARKS, Jr., an Attorney at Law of the State of Minnesota.**

No. C4–84–1869.

Supreme Court of Minnesota.

Nov. 26, 1986.

William J. Wernz, Director, Lawyers Professional Responsibility Bd., St. Paul, for appellant.

Theodore J. Collins, Dan O'Connell, St. Paul, for respondent.

PER CURIAM.

By petition filed with this court, the Director of the Minnesota Lawyers Professional Responsibility Board (LPRB) accused respondent Clayton E. Parks, Jr. of misappropriating a client's funds and misrepresenting the status of the matter to this client over a long period of time and, later, of also misrepresenting the facts to discipline authorities. Both the misappropriation and the misrepresentation to his client occurred during the time respondent Parks was on disciplinary probation for former neglect of client affairs. Respondent likewise was accused of failing to communicate with clients and failing to cooperate with the disciplinary investigation by the Ramsey County District Ethics Committee and the Minnesota Lawyers Professional Responsibility Board, and of engaging in dishonest and fraudulent conduct during the course of that investigation. By answer, respondent admitted the allegations of the petition. He likewise admitted the allegations at the referee hearing, but did present evidence in an attempt to establish mitigating circumstances. The issue remaining for our resolution is determination of appropriate discipline. The referee recommended disbarment. We concur.

Respondent has been admitted to the practice of law since 1962. He first became subject to attorney discipline procedures in 1973 when he received a private reprimand for his handling of a case a client had given him seven years before during which time he had "kidded" the client as to the case's progress. Two years later, respondent again received a private reprimand from the LPRB for neglect of client affairs and for failure to keep his client advised. On May 17, 1979, respondent by stipulation with the Director of the LPRB admitted charges of neglect of two legal matters for several years for failure to maintain communication with his clients and failure to cooperate with the disciplinary investigation. Pursuant to that stipulation, respondent was placed on probation for a two-year period. In the probation he agreed to abide by the Code of Professional Responsibility and to cooperate in any future disciplinary investigations. Finally, he consented that "for all purposes in future disciplinary proceedings" his stipulation admissions would "have the same effect as a finding by a panel or equivalent that respondent committed the conduct set forth in the complaint." By these admissions in the stipulation, it is clear respondent violated DR 1–102(A)(5) and (6), DR 6–101(A)(3), DR 7–101(A)(2), Minnesota Code of Professional Responsibility (MCPR) and our holding in *In re Chmelik*, 203 Minn. 156, 280 N.W. 283 (1938).

In 1977 respondent was retained by Crystal Shamrock Airlines (Crystal) to collect a debt from Richard Chrysler and Clifford Hjermstad. Prior to trial, a settlement was reached wherein each of the two debtors agreed to pay $6,000 to Crystal.

In March and April 1979, Chrysler made two payments totaling $1,500 to respondent who promptly remitted those sums to Crystal. On August 12, 1979, less than three months after entering into the stipulation for discipline, and while he was on probation, respondent received from Chrysler a $500 payment on the Crystal debt. Instead of forwarding that payment as he had done before, respondent deposited the money in his own personal checking account and thereafter used it for his own benefit. On October 16, 1979, Chrysler paid an additional $4,300. This, too, was placed by respondent in his own personal checking account and thereafter was used by him for his own benefit. Respondent failed to notify Crystal of either payment, and without Crystal's knowledge or consent, entered into a stipulation with Chrysler for dismissal of the lawsuit against Chrysler.

During more than three years, Crystal's president repeatedly communicated with respondent seeking information about the progress of the attempted collection of the settlement funds. Respondent misled, and, in fact, lied to Crystal by reporting his inability to collect the remaining Chrysler funds but he did express anticipation that he soon would succeed. He had collected nothing from Hjermstad. Later respon-

dent told Crystal's president that because he was unable to make the collection of the debts, he would take a personal assignment of them and pay Crystal when he received payment of some anticipated legal fees. This was done at a time when respondent had already received full payment payment from Chrysler, had converted the funds to his own use, and had stipulated to Chrysler's dismissal.

In mid-July 1982, Crystal's president filed an ethics complaint against the respondent. This complaint was investigated by both the Second District Ethics Committee and the office of the Director of the LPRB. From the date of the filing of the complaint until November 1983, respondent continued to assert the balance of the Chrysler payments had not been paid to him. During the course of the investigation, the Director learned of Chrysler's full payment. Only after respondent was confronted with Chrysler's cancelled checks did he admit misappropriation of those funds to his personal use during the time he was misrepresenting to his client his inability to complete collection.[1] By misappropriating his client's funds, respondent violated disciplinary rules DR 1–102(A)(4), DR 9–102(A) and DR 9–102(B)(1) and (4), MCPR, and his misrepresentation to his client constituted a violation of disciplinary rules DR 1–102(A)(3), (4), (5) and (6) MCPR.

Even though respondent had already collected the Chrysler debt and converted $4,800 of it to his personal use, on October 12, 1983, he falsely represented to the Director that he had been unsuccessful in the collection of the Chrysler debt. On a later occasion he again made the same misrepresentation to an attorney in the Director's office. Only after the confrontation, when shown the cancelled Chrysler checks, did respondent admit the misappropriation as well as his misrepresentation which had been made over the years to his client and to the Director's office. This mis' presentation to the Director's office constitutes

fraud and violates DR 1–102(A)(3), (4), (5) and (6), MCPR.

In November 1983, after admitting to the misappropriation and misrepresentation, respondent promised to provide his books and records within one week to demonstrate the method the Chrysler funds had been handled. Subsequent demands for compliance with the agreement were made with the Director's office, but respondent failed to furnish the records for over 3½ months. This delay in cooperation violated DR 1–102(A)(4), (5) and (6), MCPR, and this court's holding in *In re Cartwright,* 282 N.W.2d 548 (Minn.1979). Finally, as indicated, the misappropriation and the lying about the status of the Chrysler account occurred while respondent was on probation.

The primary purpose of lawyer discipline proceedings is to protect the administration of justice, the courts, the legal profession, and above all the public. *In re Serstock,* 316 N.W.2d 559 (Minn.1982). Where a violation of a lawyer's responsibility to clients and the public is uncontested and clearly established, our duty ordinarily compels an order of disbarment. *In re Hanson,* 258 Minn. 231, 103 N.W.2d 863, 864 (1960). For more than 60 years this court generally has imposed the drastic sanction of disbarment in cases of serious misappropriation of client funds. *In re Primus,* 283 N.W.2d 519, 520 (Minn.1979) (citing cases). *See also In re Austin,* 333 N.W.2d 633 (Minn. 1983). It is only on rare occasions that this court has failed to order disbarment for attorney misappropriation of client funds, and then only because of a showing by clear and convincing evidence of such substantial mitigating circumstances as to demonstrate that "respondent did not intentionally convert funds to his own use." *In re Fling,* 316 N.W.2d 556, 558 (Minn. 1982).

Is this one of those rare occasions? Respondent asserts that it is. Essentially he claims a character reputation for veracity and honesty; that the misappropriation

---

1. On November 22, 1983, the very day respondent admitted his misconduct with the Director, respondent paid $15,000 to Crystal as a settlement of the Chrysler and Hjermstad debt.

was an aberration in those claimed character traits because of his serious personal financial circumstances, marital difficulties, plus emotional and psychological difficulties. In our opinion, none of these assertions were established by clear and convincing evidence, nor do any of them mitigate respondent's conduct of misappropriation and falsehood.

Respondent called certain witnesses to testify as to a character reputation. No witness testified that he had taken respondent's disciplinary record into account and still concluded that respondent was a trustworthy person. At most, all this character evidence suggests is that prior to the filing of the petition in the instant proceedings, respondent had a reputation for trustworthiness.[2] Clearly it fails to meet the clear and convincing standard, and at any rate, even if proved, standing alone, would be insufficient as a mitigating circumstance.

Respondent next contends his dire financial condition necessarily compelled him to misappropriate clients' funds over a period of almost four years. Respondent may well have experienced some financial difficulties during this four-year period of misappropriation of client funds. However, during that period, while he had $4,800 of his client's money, he was able to mortgage his home and purchase a boat. Moreover, when he was finally confronted with his misappropriation and lies given to conceal the misappropriation in November 1983, respondent was, on the same day, able to raise $15,000 to pay off his client. While it is doubtful whether an attorney's financial difficulties alone will ever constitute a mitigating circumstance to disbarment when he or she has converted client funds, in the instant case, the proof of such claim of financial destitution fell far short of the clear and convincing evidence standard.

Respondent also argues that marital difficulties extending over a number of years affected him in his professional activities. Without deciding whether such an assertion would ever constitute grounds for mitigation, the contention was supported solely by only the respondent's conclusionary statement that he and his wife had been having marital difficulties for 10 or 12 years—nothing else. Manifestly, this is insufficient to meet the clear and convincing evidence requirement.

Finally, mitigation justifying a lesser sanction than disbarment is claimed on the ground that during this period respondent was experiencing emotional and psychological difficulties. In *In re Weyhrich*, 339 N.W.2d 274 (Minn.1983), we held that where an attorney raises psychological disability as a mitigating factor in a disciplinary proceeding, the claimant must prove that the problem exists, that it was the cause of the misconduct charged, that the lawyer is undergoing treatment for the problem, that the program and treatment is being made to the point recovery has arrested the misconduct, and that the misconduct is unlikely to recur. All of the foregoing requirements must be proved by clear and convincing evidence. By respondent's own admission in his brief to this court, the psychological evidence here fails to meet the *Weyhrich* standards.

Because we find no factors that would mitigate respondent's conduct in misappropriating his client's money, we conclude that the drastic remedy of disbarment is warranted. Our conclusion is bolstered by the fact that in addition to the misappropriation, the respondent engaged in its fraudulent concealment for over four years. Such protracted and serious fraud and dishonesty warrants serious discipline in and of itself. *See, e.g., In re Daffer*, 344 N.W.2d 382 (Minn.1984); *In re Prieb*, 207 Minn. 97, 290 N.W. 552 (1940); *In re Cary*, 146 Minn. 80, 177 N.W. 801 (1920). *See also* J. Morris Clark and Charles W. Wolfrom, *Professional Responsibility: Issues for Minnesota Attorneys*, 26 (1976).

By our action today, we are not unmindful of the natural concern and sympathy toward an errant attorney whose conduct results in the loss of his professional liveli-

---

**2.** Apparently those witnesses were unaware of respondent's private disciplinary history. Some seemed to not really be acquainted with the charged misconduct in this case.

hood. However, our duty in protecting prospective clients, the justice system itself, and members of the public generally, in our opinion, compels disbarment.

It is so ordered.