In Re Petition for DISCIPLINARY AC-
TION AGAINST Warren Elof STROM,
an Attorney at Law of the State of
Minnesota.

No. C4–94–1551.

Supreme Court of Minnesota.

July 18, 1996.

Marcia A. Johnson, Director of the Office
of Lawyers Professional Responsibility, St.
Paul, for appellant.

Warren Elof Strom, Maple Park, IL, pro
se.

## OPINION

### PER CURIAM.

The Director of the Office of Lawyers Pro-
fessional Responsibility filed a petition, dated
April 27, 1994, charging respondent, Warren
Elof Strom, with one count of unprofessional
conduct warranting public discipline. The
petition alleges eight instances of misappro-
priation of the funds of clients and others for
whom respondent had agreed to act in a
fiduciary capacity. Respondent never an-
swered the petition, and the Director's at-
tempts to contact him and have him served
at his home were unsuccessful. On July 21,
1994, the Director applied for an order sus-
pending respondent from the practice of law
pursuant to Rule 12(c)(1), Rules on Lawyers
Professional Responsibility (RLPR).[1] We

---

1. Rule 12(c)(1) provides:
   If the respondent cannot be found in the state,
   the Director shall mail a copy of the petition to
   the respondent's last known address and file

   an affidavit of mailing with this Court. There-
   after the Director may apply to this Court for
   an order suspending the respondent from the
   practice of law. A copy of the order, when

suspended respondent, allowing him one year to move for vacation of the order of suspension and for leave to answer the disciplinary petition. Respondent did not so move, nor did he comply with Rule 26, RLPR, requiring that he notify clients and tribunals that he was suspended. On March 14, 1996, after one year had passed since respondent's suspension, the Director petitioned, under Rule 12(c)(2), RLPR, for an order to show cause why appropriate disciplinary action should not be taken against respondent. We granted the Director's petition and issued an order that respondent appear before us on June 6, 1996, to show cause why we should not discipline him. Respondent did not appear, and the issue before us now is what discipline to impose.[2]

Respondent was admitted to practice law in Minnesota on June 5, 1970, and in Illinois on November 15, 1971. Respondent's last known address is in Maple Park, Illinois, and he has apparently never practiced in Minnesota. He is voluntarily on restricted Continuing Legal Education status in Minnesota, and since October 1, 1988, he has been suspended for nonpayment of the attorney registration fee.

On June 15, 1993, while a six-count complaint was pending against him before the Illinois Attorney Registration and Disciplinary Commission Hearing Board, and two other charges were under investigation by the Illinois Commission Administrator, respondent moved the Supreme Court of Illinois to strike his name from the Master Roll of Attorneys licensed to practice in Illinois. *See* Ill. Sup.Ct. Rule 762(a) (setting out procedure for disbarment on consent). On June 24, 1993, pursuant to Rule 762(a), the Administrator of the Illinois Commission filed a statement of charges against respondent setting forth a description of the evidence that

would be presented if the cause proceeded to hearing and the findings of misconduct the evidence would support. After receiving the statement of charges, respondent filed an affidavit with the Illinois Supreme Court acknowledging that if the "cause proceeded to hearing on the charges set forth in the Administrator's statement, the Administrator would present the evidence described in the statement, and that evidence would clearly and convincingly establish the facts and conclusions of misconduct set forth in the statement."

The following allegations were the subject of the Illinois complaint:

1. In December 1986, respondent received $4,000 for his clients, K.G. and D.G., whom he represented in their claims against a homeowners' association. Without client authorization, he used $2,700 of the money for his own business and personal purposes, causing the first check he wrote to his clients for their share of the settlement to be returned for insufficient funds.

2. In early 1987, respondent used for his own business or personal purposes $95,000 of $100,000 that his client, P.J.C., had given him as earnest money for the purchase of a bank. Later, he returned the earnest money to P.J.C., but the first check that he drew on his law firm's trust account was twice not honored because of insufficient funds. Respondent then drew another check on the same account and subsequently deposited three unrelated checks in order to cover the check to P.J.C.

3. In 1987, respondent used for his own business or personal purposes $29,000 of $30,000 he received from purchasers of real property from his client F.B., and he overdrew his law firm's trust account. Part of

---

made and filed, shall be mailed to each district court judge of this state. Within one year after the order is filed, the respondent may move this Court for a vacation of the order of suspension and for leave to answer the petition for disciplinary action.

**2.** According to Rule 12(c)(2), if the respondent does not move within one year of suspension for vacation of the order of suspension and for leave to answer the disciplinary petition

the Director shall petition this Court for an order directing the respondent to show cause to this Court why appropriate disciplinary action should not be taken. * * * If the respondent fails to respond to the order to show cause, this Court may proceed under Rule 15. Rule 15 provides the various dispositions available to us upon conclusion of a disciplinary proceeding.

the money was used to repay P.J.C.'s earnest money.

4. When F.B. closed on the property sale, the purchasers delivered a check for over $79,000 to respondent, which he deposited into his firm's trust account. He paid $30,000 to F.B. and within one week had used over $45,000 for his own business or personal purposes without F.B.'s authorization. Before he finally paid her with a check backed by sufficient funds, his first $29,000 check to F.B. was returned for insufficient funds.

5. On April 1, 1987, in the course of representing Boncosky & Company in the sale of real estate, respondent received a check from Century Title Company for more than $55,000 for the sale. He deposited the check into his firm trust account, and by April 15, had used all of the funds for his own business or personal purposes and overdrawn the account. Two weeks later he wrote a check to Boncosky for the amount of the sale proceeds, and then deposited enough of his own personal funds to cover the check.

6. In January 1988, respondent's clients, M.R. and G.R., delivered $77,000 for the purchase of real estate in Wisconsin. He deposited the check into his firm's trust account and within two weeks had used over $68,000 of it for his own business or personal purposes without authorization from his clients. He then drew a trust account check payable to Century 21 Real Estate, which was not honored because of insufficient funds the first time it was presented, but was subsequently paid.

In addition to the above charges that were the subject of the complaint, the Illinois Administrator's statement included notice of ongoing investigations into two other instances of misappropriation of substantial sums of money. In the first instance respondent represented M.R. in the purchase of real property from L.D. Respondent deposited a $200,000 check he received from M.R. into an account that he used for his own business and personal needs and was neither a trust nor an escrow account. Respondent expended for his own business or personal purposes more than $195,000 of the funds within one week and approximately one month later drew a $200,000 check payable to L.D. on his law office trust account, although the trust account contained less than $5,000, and none of the money in it belonged to either M.R. or L.D. After the check was dishonored because of insufficient funds, respondent paid L.D. with a $150,000 cashier's check and a $50,000 check drawn on his trust account.

The second investigation related to respondent's conversion of $60,000 in the course of representing Boncosky Oil Company in the purchase of real property from L.N. and E.N. Respondent received a $60,000 check from Boncosky Oil, which was to be placed in escrow pending final approval of the sale. Rather than deposit the check into a trust or escrow account, respondent cashed the check and used all of the money for his own business or personal purposes. Boncosky Oil later requested that respondent provide it with the account number and the name of the institution that was holding the money. Respondent refused to do so, but made restitution to his client by depositing $60,000 into Boncosky Oil's account.

The Illinois Supreme Court granted respondent's motion to remove his name from the roll of licensed attorneys and disbarred him under Ill. Sup.Ct. R. 762(a). On January 21, 1994, the Director of Minnesota's Office of Lawyers Professional Responsibility received notification from the Illinois Attorney Registration and Disciplinary Commission that respondent had been disciplined in Illinois. As a result, the Director commenced an investigation and on February 4, 1994, mailed a notice of investigation to respondent's address of record in Illinois. Although respondent has not been located at his address of record in the Illinois attorney registration roll, none of the letters sent by the Director's Office to that address has been returned by the post office as undeliverable.

■ The Director has complied with the requirements of Rule 12(c)(2), RLPR, having caused the order to show cause to be published in both *Finance & Commerce* and the *Kane County Chronicle* in Illinois. Respondent has failed to respond to the order, and we proceed here according to Rules 12(c)(2) and 15, RLPR. The Minnesota petition for disciplinary action incorporates by reference

the allegations made in the Illinois proceeding and concludes that respondent's misappropriation of large sums of money from various individuals violated Minn. R. Prof. Conduct 1.15(a) and (b), and 8.4(b), (c), and (d). Respondent has never responded to the allegations in Minnesota.

According to Rule 13(b), RLPR, if a respondent fails to answer a petition for disciplinary action, the allegations therein will be deemed admitted. In *In re Morin*, 469 N.W.2d 714 (Minn.1991), we considered another instance where the attorney's conduct had already been the subject of discipline in another state. That case also proceeded under Rule 12(c), because the attorney could not be found in Minnesota. Although there had been no order by this court deeming the allegation admitted, the Director took all the steps required under Rule 12(c). The attorney never responded to the petition, the order of suspension, or the order to show cause, and we concluded that the Director "took all reasonable steps to locate and notify" the attorney and that therefore it was proper to deem the allegations in the petition admitted. *Id.* at 716. Similarly here, we hold that the Director made all reasonable efforts to invite respondent to come to his own defense. He never responded to this proceeding, and in Illinois his response was essentially an admission of the misconduct. Under the circumstances here, we find it appropriate to deem admitted the allegations in the petition.

■ The only question before us then is the appropriate discipline to be imposed. The purpose of disciplinary sanctions is "to protect the public and the court and to serve as a deterrent against future misconduct." *In re Jensen*, 418 N.W.2d 721, 722 (Minn. 1988). In determining the appropriate discipline, we weigh the nature of the misconduct, the cumulative weight of the rule violations, and the harm to the public and to the legal profession. *In re Lochow*, 469 N.W.2d 91, 96 (Minn.1991); *see also In re Shoemaker*, 518 N.W.2d 552, 555 (Minn.1994).

■ "Disbarment is the usual discipline for attorney misappropriation of client funds except in instances when the attorney presents clear and convincing evidence of sub-

stantial mitigating circumstances which show that the attorney did not intentionally convert the funds." *In re LaChapelle*, 491 N.W.2d 17, 21 (Minn.1992); *In re Parks*, 396 N.W.2d 560 (Minn.1986); *see also In re Maresh*, 539 N.W.2d 247, 248 (Minn.1995) ("Taken separately, acts of misappropriation, misrepresentation, and trust account mismanagement all warrant serious discipline."); *Lochow*, 469 N.W.2d at 98 (advising the bar that misuse of trust accounts in the future "will almost invariably result in lengthy suspension at the very least and disbarment at worst"). An attorney commits misappropriation any time funds belonging to a client are not kept in trust and are used for any purpose other than a purpose specified by the client. *In re Isaacs*, 451 N.W.2d 209, 211 (Minn.1990). Respondent has not offered any mitigating evidence that might persuade us that disbarment is not an appropriate consequence of his extensive misappropriation of client funds. *See, e.g., In re Pyles*, 421 N.W.2d 321, 326 (Minn.1988) (no disbarment where attorney's extensive pro bono work had a detrimental effect on his financial situation); *In re Heffernan*, 351 N.W.2d 13, 15 (Minn.1984) (attorney's extensive pro bono work indicated an otherwise ethical practice and the misappropriation of client funds was an isolated incident). We find, therefore, that respondent's misconduct in Illinois, coupled with his complete failure to participate in these disciplinary proceedings, warrant his disbarment.

Disbarment ordered.