IN RE DISBARMENT OF MARVIN OSTENSOE.[1]

January 10, 1936.

No. 30,561.

[1] Reported in 264 N. W. 569.

*Oscar G. Haugland* and *McNeil V. Seymour,* for State Board of Law Examiners.

*Marvin Ostensoe, pro se.*

PER CURIAM.

Proceeding for the discipline of an attorney where the evidence was heard by the Honorable Vernon Gates, judge of the third judicial district, as referee. The matter is before us on his findings, which establish and present the following facts:

June 7, 1933, Mr. Ostensoe was retained by L. W. Quackenbush, as father and natural guardian of Bobby Quackenbush, a minor, "to recover by suit or otherwise" damages which had been sustained by the son on that day by having come into contact with a live wire of an electric transmission line. The agreement was in writing and reserved to Mr. Ostensoe "fifty per cent of the amount recovered." How, in any view, so high a charge could have been justified, ethically or otherwise, respondent does not explain.

An action commenced under that retainer by respondent, as attorney, in the state court was removed to the federal district court. While pending there a settlement was negotiated for $2,850. Before its consummation it was approved by the Honorable Matthew M. Joyce, United States district judge. His order of approval stipulated that $500 was to be paid respondent in full payment of his services. Six hundred dollars was assigned to the father as reimbursement for other expenses actually incurred. The balance of $1,750 was to be deposited in a designated bank to the credit of the injured boy and upon condition that no part of it should be withdrawn except by order of court. The expenses incurred by the father consisted of five items, ranging from $50 to $120, as earned but then unpaid charges for nursing, hospitalization, and medical treatment.

The settlement was consummated accordingly. But the conditions of Judge Joyce's order were wilfully disobeyed by respondent in that he so managed things that he got for himself an additional $216, which necessarily reduced the fund already assigned to others. Respondent knew that the creditors were looking to him, as the

attorney who had collected the money, for payment. The referee well considered that respondent was guilty of conversion of the $216.

His wrongdoing was increased when, upon inquiry from one of the nurses, he advised her that the matter "will be taken care of." He knew that his own action would make it extremely doubtful that she would ever be paid unless further and improper inroads were made on the fund set aside for benefit of the injured boy.

Another chapter of respondent's wrongdoing consists of his failure promptly to answer a letter of inquiry written him by Judge Joyce, October 27, 1935. No answer forthcoming, the judge again wrote November 9, calling attention to the earlier and unanswered letter and asking for "the courtesy of a reply."

Finally, November 13, respondent wrote Judge Joyce, saying among other things: "We are at a loss to know why Mr. Quackenbush has failed to take care of this matter. I have repeatedly advised Mr. Quackenbush to pay these two girls, and was until recently of the opinion that he had done so." Characterization of such action is not necessary in view of the facts already stated. It is enough to recall that respondent's own highly improper action made payment of the just claims in question extremely doubtful, if not impossible.

We but mention an unsuccessful effort, just as improper as to purpose but somewhat different in technique, which respondent made in the probate court of Fillmore county to confirm his right to the additional money he had improperly obtained. In April, 1935, after a hearing before Judge Joyce, respondent, together with L. W. Quackenbush, father of the injured boy, was found guilty of contempt of court. Respondent was fined $100 and his fine was paid. After service of the information upon him, but before the hearing, respondent paid the outstanding claims, earlier payment of which he had hindered or prevented as already indicated.

Briefly, that is the story of respondent's wrongdoing. It is enough to warrant a measure of discipline more severe than that which we shall apply. Under District Court Rule 3, 175 Minn. xxxix, respondent might have been allowed, in a state court, a

maximum fee of 25 per cent of the recovery. But it had been judicially determined, by an order drawn by himself for the judge's signature, that he was to get only $500. He may have felt chagrined that the maximum was not allowed. That may somewhat explain, but does not at all justify, his action. It was bad enough to contemn the court's order. But courts ordinarily can take care of themselves, as Judge Joyce so well demonstrated. It was a more serious thing that respondent attempted to overreach laymen, one his own client and a minor, who must depend on others, lawyers and judges, to protect and vindicate their rights. The money factor aside, respondent's action was of the sort that explains why too many laymen have too scant respect for lawyers. His was a breach of duty not only to individuals but also to his profession.

But Mr. Ostensoe's record as man and attorney is not otherwise stained. He is a young man, of good standing and seemingly good promise, personally and professionally. Already he has had some and condign punishment. Our function now is not punishment. However, in the interest of lawyers and their clients, some measure of discipline is advisable, if not inescapable. We conclude that the ends of justice will be served adequately by suspending respondent from the practice of law for six months from the entry of judgment. We would not be so lenient were we not confident that nothing more is needed to insure respondent's future respect, not only for all orders of court, but also for the accepted standards of the profession. It is for respondent himself to show that our confidence is not misplaced.

Let judgment be entered suspending respondent from the practice of law for the period of six months from the date thereof.