**In re Petition for DISCIPLINARY ACTION AGAINST Mark H. STROMWALL, an Attorney at Law of the State of Minnesota.**

No. C4–91–580.

Supreme Court of Minnesota.

March 6, 1992.

William J. Wernz, Director of Offices of Lawyers Professional Responsibility, St. Paul, for appellant.

Theodore J. Collins, Collins, Buckley, Sauntry & Haugh, St. Paul, for respondent.

PER CURIAM.

By petition filed with this court on April 8, 1991, the director of the Lawyers Professional Responsibility Board charged Mark H. Stromwall with two counts of professional misconduct. Thereafter the respondent stipulated to a temporary suspension from the practice of law pursuant to Rule 16 of the Minnesota Rules on Lawyers Professional Responsibility (MRLPR) (1991). Following a hearing, a referee appointed by this court recommended disbarment. We also conclude that respondent must be disbarred.

The respondent was admitted to practice in 1977 and became associated with a large metropolitan law firm. Two years later he returned to his hometown, Prior Lake, and for two years worked as an assistant prosecutor in the office of the Scott County Attorney before commencing a one-year stint as a public defender. In 1982 he became a sole practitioner and was elected a commissioner of Scott County, an office he held for eight years. In 1990 he conducted an unsuccessful campaign for Scott County Attorney.

The respondent admits he committed the acts which constitute the gravamen of the director's petition. The first count arose out of the respondent's representation of the owner of an auto body shop. In October 1989 two minors started a fire which caused substantial damage to the building in which the shop was situated. Unable to resolve his claim with either his own fire insurer or the liability insurers of the minor miscreants, in December 1989 the owner engaged the respondent, to whom he paid a $1,000 retainer, to secure payment from his fire insurer of funds to repair the building so that the shop could be reopened and to undertake recovery of his uninsured damages resulting from the interruption of the business of the body shop. It was important to the 66–year–old partially retired client to get back to work so that he could financially assist the youngest of his seven children through college.

Within three months the respondent received a check in the amount of $29,746.26 in partial payment of the fire insurance claim. Forging the client's endorsement, the respondent deposited the funds to his trust account. When the building contractors refused to go forward with the repair work without some payment, the respondent paid them $17,000, one-half of the anticipated $34,000 repair cost. Although the payment was made with the client's money, the respondent told him that it was an advance from the respondent's personal funds. The respondent then misappropriated the $12,000 balance for his own purposes, including the purchase of an automobile. In December 1990 the insurer paid the balance of the fire claim. The respondent forged the client's endorsement on the $8,218.92 check, deposited it to his trust account, and then misappropriated about $6,000 to pay his own daughter's college tuition and other personal expenses.

By the end of 1990 the building contractors, who refused to complete the repairs without some further payment, were threatening to file mechanics' liens against the building. The liability insurers were denying liability for damages for business interruption because the auto body shop had not been reopened promptly. The client, distraught because of his inability to reopen the shop and the insurers' apparent refusal to honor any part of his claim, finally complained directly to his fire insurer about the failure to pay his claim. He was informed that the insurer had paid almost $38,000 and given copies of the two

cancelled checks, each bearing the client's forged signature. At a tape-recorded meeting on February 1, 1991, the client confronted the respondent with the cancelled checks. Although the respondent admitted forging the signatures, he defended his action by saying that he was holding the money because he thought he might collect more. On February 6, 1991, the respondent reimbursed with interest the amount he misappropriated from his client. The referee concluded the conduct outlined in count one of the petition violated Rules 1.15, 4.1, 8.4(b) and 8.4(c) of the Minnesota Rules of Professional Conduct (MRPC) (1991).

The second count arose out of respondent's commingling of funds, failure to maintain adequate trust account records, and misappropriation from another client of $1,500. The referee concluded the conduct outlined in count two of the petition violated Rules 1.15, 1.16, 8.4(b) and 8.4(c) of the MRPC.

Respondent challenges the referee's conclusions with respect to mitigating and aggravating circumstances. The referee concluded, as do we, that misappropriating a client's funds while running for the office of the chief law enforcement officer of Scott County is an aggravating circumstance. *See, e.g., In re Serstock,* 432 N.W.2d 179, 184 (Minn.1988). We also think that the referee properly refused to recognize as a mitigating circumstance respondent's community service; although commendable, factors such as community service "do not militate against the imposition of discipline in matters of serious ethical misconduct." *In re Franke,* 345 N.W.2d 224, 229 (Minn.1984). Finally, we join in the referee's conclusion that respondent's restitution, because incited by being "caught in his lies and misdeeds by his client," has very little mitigating effect. Restitution prompted not by remorse, but by being caught in perpetrating a fraud, is of little redeeming value. *In re Okerman,* 310 N.W.2d 568, 571 (Minn.1981).

This court has long concluded that conversion of client funds for private benefit begets grave sanctions. *In re Parks,* 396 N.W.2d 560, 562 (Minn.1986). The intentional harm which accompanied the respondent's misappropriations profoundly aggravates his misconduct. Over the course of his representation of this client, the respondent deliberately inverted his role as a lawyer, by compounding the damage his client sustained as a result of the fire. He delayed the insurer's payment of the fire claim. His deceitful and dilatory conduct prevented his client from returning to work expeditiously, depriving his client of his livelihood as well as causing him much anxiety. Finally, at some point respondent's misconduct, not the fire, became the cause of the interruption of the client's business, prejudicing the client's cause of action against the youths who set the fire.

We have weighed the nature of the misconduct and considered the cumulative weight of the disciplinary violations, the harm to the public, and the harm to the legal profession, *In re Lochow,* 469 N.W.2d 91, 96 (Minn.1991), and are of the opinion it is incumbent upon us to order disbarment.

Disbarred.