In re Petition for **DISCIPLINARY ACTION AGAINST Stanley C. OLSEN, Jr., an Attorney at Law of the State of Minnesota.**

**No. C8–90–1012.**

Supreme Court of Minnesota.

July 31, 1992.

Betty M. Shaw, Asst. Director, Office of Lawyers Professional Responsibility Bd., St. Paul, for petitioner.

Jack Nordby, Meshbesher & Spence, Ltd., Minneapolis, for respondent.

PER CURIAM.

On May 3, 1990, the Director of the Office of Lawyers Professional Responsibility filed a petition for disciplinary action against Stanley C. Olsen, Jr. The petition, and three subsequently filed supplemental petitions, charge Olsen with twelve counts of misconduct, including misappropriating funds from clients, misrepresentations to the members of his firm, trust account violations, failing to file tax returns, induc-

ing a client to give a large unsecured personal loan by misrepresenting the purpose of the loan and then applying the proceeds to purposes other than those stated, and misappropriating property of his law firm. On May 11, 1990, Olsen was temporarily suspended from the practice of law. A hearing on the charges was held on September 16–17, 1991. The referee filed his findings, conclusions and recommendation on September 30, 1991, and recommended disbarment.

Stanley C. Olsen, Jr. was admitted to the bar in Minnesota in October 1973. He became a nationally recognized expert in the area of transportation law, specializing in the trucking industry. Until his suspension in May 1990, Olsen was in private practice, most recently with a law firm he founded in 1981 with two partners. The firm had a policy that all partners be signatories on all client trust accounts, and that the firm's bookkeeper would maintain the appropriate ledgers, books and records on each account.

In 1986, Olsen began depositing client funds into individual client accounts on which he was the only signatory. Olsen did not reveal the existence of the accounts to his partners and therefore the firm bookkeeper did not maintain the appropriate client trust account books and records. Olsen also began misappropriating funds from these accounts. When necessary to avoid discovery, Olsen made "restitution" to some of these clients, using funds he misappropriated from other clients. Olsen also misappropriated property and money from his law firm. In total, Olsen misappropriated approximately $214,000 from his clients and the firm, and made "restitution" of approximately $150,000.

In November 1988, Olsen borrowed $39,-000 from a client of the firm. Olsen did not give the client any security for the loan. Olsen told the client that he needed the money to make up shortages in the firm's trust account, but used the money for other purposes. In April 1990, Olsen defaulted on the note, leaving an unpaid balance of approximately $28,000. Olsen also failed to file state and federal income tax returns for 1989.

Olsen has admitted all of the counts in the Director's petition for disciplinary action but attributes his wrongdoing to a compulsive gambling disorder. Olsen testified that he had a long history of gambling, beginning in high school and continuing through college, law school and his years of legal practice, and that in 1990 he was diagnosed by a physician as a compulsive gambler. However, the record also indicates that prior to 1986, when his gambling caused him financial problems, he was able to borrow money from his family and to stop gambling for a time.

Olsen's partners knew that he gambled, but they did not notice that it interfered with his work nor were they aware that it caused him financial difficulties. Further, Olsen's alleged gambling disorder did not affect his personal finances or lifestyle. During the four years he was misappropriating funds from clients he kept his mortgage current, paid for his son's education and entered into personal business ventures. Other than Olsen's testimony, there was no evidence presented that the misappropriated money was spent gambling.

Olsen also testified that since 1990 he has stopped gambling and is actively involved in a program of recovery through Gamblers Anonymous. This assertion was supported by testimony of other members of his Gamblers Anonymous group and of the program director of a compulsive gambling intervention program. No medical or other expert evidence was presented on this issue.

The referee concluded that Olsen had misappropriated funds from seven clients in violation of Rules 1.15 and 8.4(c) of the Minnesota Rules of Professional Conduct; had misappropriated funds and property from his firm in violation of Rule 8.4(c), Minn.R.Prof.Conduct; had made false statements to the shareholders in his firm

in violation of Rule 8.4(c), Minn.R.Prof.Conduct; had failed to file federal and state income tax returns in 1989 in violation of Rule 8.4(b) and (d), Minn.R.Prof.Conduct; and had solicited an unsecured loan from a client by misrepresenting the purpose of the loan and then applied the proceeds to another purpose, in violation of Rules 1.8(a) and 8.4(c), Minn.R.Prof.Conduct.

Because Olsen did not order a transcript of the hearing, the findings and conclusions of the referee are deemed conclusive. Rule 14(e), Rules on Lawyers Professional Responsibility (RLPR); *In re Graham*, 453 N.W.2d 313, 315 (Minn.), *cert. denied*, ——U.S. ——, 111 S.Ct. 67, 112 L.Ed.2d 41 (1990). Therefore, the only issue before us is the determination of the appropriate sanction for Olsen in light of the referee's findings and conclusions.

■ We have said previously that sanctions are not imposed to punish the attorney, but to protect the public, to guard the administration of justice, and to deter future misconduct. *In re Jensen*, 418 N.W.2d 721, 722 (Minn.1988); *In re Hanson*, 258 Minn. 231, 233, 103 N.W.2d 863, 864 (1960). In determining the appropriate sanction, "we consider the nature of the misconduct, the cumulative weight of the violations, the harm to the public and the harm to the profession." *In re Flanery*, 431 N.W.2d 115, 118 (Minn.1988) (quoting *In re Franke*, 345 N.W.2d 224, 228 (Minn. 1984)). In cases involving the mishandling of client matters, we also take into account the number of clients harmed by the attorney's conduct, the extent of the injuries, any mitigating circumstances, and any prior misconduct. *Id.* Although we place great weight on the referee's recommendation, the final responsibility for determining the appropriate sanction rests with the court. *In re Larsen*, 459 N.W.2d 115, 120 (Minn.1990).

■ Of most significance to this determination is the substantial misappropriation of client funds. The referee found, and Olsen admitted to, misappropriating over $200,000 over a four year period. Given our duty to protect the public, misappropriation of client funds has frequently warranted the most severe of sanctions, disbarment. *In re Austin*, 333 N.W.2d 633, 634 (Minn.1983).

In cases where we have not imposed the sanction of disbarment for extensive misappropriation of client funds, there were substantial mitigating circumstances. *In re Pyles*, 421 N.W.2d 321, 326 (Minn.1988) (attorney's whole life indicated care and concern for those less privileged, extensive pro bono work performed had a deleterious effect on both his professional and family finances); *In re Heffernan*, 351 N.W.2d 13, 15 (Minn.1984) (attorney performed significant pro bono work, single misappropriation of $7,000–$9,000 an isolated incident in an otherwise ethical practice); *In re Shaw*, 298 N.W.2d 133, 135 (Minn.1980) (conversion consisted of a single event, temporary misuse of $10,000 only for a short time and full restitution made).

The referee also found that Olsen violated the ethical standard which prohibits an attorney from entering into a business transaction with a client unless certain requirements are met. Minn.R.Prof.Conduct 1.8. Such violations merit serious disciplinary sanctions. *See In re Tuzinski*, 363 N.W.2d 305, 306 (Minn.1985); *In re Pearson*, 352 N.W.2d 415, 418–20 (Minn.1984).

Further, Olsen's misconduct of failing to file federal and state income tax returns also warrants severe sanction. In Minnesota, the discipline imposed for failure to file tax returns is either disbarment or suspension. *In re Bunker*, 294 Minn. 47, 55, 199 N.W.2d 628, 632 (1972); *In re Chrysler*, 434 N.W.2d 668, 669 (Minn.1989). Finally, Olsen's misconduct in misappropriating funds from his firm, and making misrepresentations to his firm, and his pattern of trust account violations are additional aggravating factors.

Olsen acknowledges the seriousness of these violations but asserts that the discipline imposed upon him for his misconduct

should be mitigated because 1) he is a compulsive gambler and thus suffers from a severe psychological disability; 2) he was under financial hardship at the time of the misconduct; 3) he has made partial restitution to his clients; 4) these disciplinary proceedings have been a form of punishment; and 5) he has never been disciplined for professional misconduct before.

■ In order to establish severe psychological disability as a mitigating factor, the attorney facing discipline must prove that 1) he or she has a severe psychological problem; 2) the psychological problem was the cause of the misconduct; 3) he or she is undergoing treatment for the psychological problem and making progress toward recovery; 4) the misconduct has been arrested by recovery; and 5) the misconduct is not likely to happen again. *In re Weyhrich*, 339 N.W.2d 274, 279 (Minn.1983).

■ Other than his own testimony, Olsen presented only limited evidence that compulsive gambling is a severe psychological disorder or that he suffered from it. The referee concluded that Olsen had not shown that he has a compulsive gambling or any other severe psychological disorder, that compulsive gambling caused his misconduct, or that he is recovering from the problem. This record does not meet the requirements of the *Weyhrich* analysis. Therefore we do not consider Olsen's gambling as a mitigating factor for purposes of determining the appropriate disciplinary sanction.

■ Olsen asserts that the financial hardship he suffered because of his compulsive gambling disorder may be a mitigating factor. We have never recognized financial hardship alone as a mitigating factor precluding disbarment, stating that "it is doubtful whether an attorney's financial difficulties alone will ever constitute a mitigating circumstance to disbarment when he or she has converted client funds." *In re Parks*, 396 N.W.2d 560, 563 (Minn.1986). Additionally, the referee was not convinced that Olsen had suffered any

financial hardship from gambling, noting that Olsen's personal finances did not seem to suffer during the time he was misappropriating funds from his clients.

■ Olsen also asserts that restitution may be a mitigating factor. We have considered restitution as a mitigating factor. *In re Hart*, 445 N.W.2d 836, 840 (Minn. 1989). However, restitution, even substantial restitution, will not preclude disbarment for substantial misappropriation of client funds. *In re Plowman*, 465 N.W.2d 921 (Minn.1991) (attorney acknowledged in stipulation that disbarment appropriate despite partial restitution of $110,000). Olsen cites *In re Nurnberger*, 272 N.W.2d 914 (Minn.1978) as the basis of his restitution argument. In *Nurnberger*, the attorney provided full restitution to his clients, informed them of his wrongdoing and then turned himself in to the Lawyers Board. *Id.* The referee here found that Olsen's clients have not been fully repaid, and that much of the "restitution" he did make to clients was made by misappropriating funds from other clients. Therefore, we conclude that restitution will not be considered as mitigation in this matter.

Olsen also urges us to consider that these disciplinary proceedings themselves are a form of sanction, citing *In re Perl*, 407 N.W.2d 678 (Minn.1987) and *In re Ostensoe*, 196 Minn. 102, 264 N.W. 569 (1936). Cases of serious misappropriation from clients, however, warrant more than merely having to go through the disciplinary proceedings themselves. In such cases, the imposition of severe sanctions is inescapable.

■ The final mitigating factor asserted by Olsen is his lack of prior discipline. We do consider an attorney's lack of prior discipline when determining the appropriate sanction for wrongdoing. *In re Nora*, 450 N.W.2d 328, 330 (Minn.), *cert. denied*, 496 U.S. 940, 110 S.Ct. 3223, 110 L.Ed.2d 670 (1990). However, in a case of extensive misappropriation of client funds, the lack of prior discipline is not enough to prevent the imposition of disbarment.

The referee found that Olsen misappropriated over $200,000 from his clients. This substantial misappropriation of client funds, aggravated by his other serious misconduct, requires us to accept the referee's recommendation and order Olsen disbarred.