**In re Petition for DISCIPLINARY ACTION AGAINST Max J. RUTTGER, III, an Attorney at Law of the State of Minnesota.**

**No. C8–97–109.**

Supreme Court of Minnesota.

July 17, 1997.

Martin A. Cole, Acting Director, Candice M. Hojan, Sr. Asst. Director, Office of Lawyers Prof. Responsibility, St. Paul, for Office of Lawyers Professional Responsibility.

Criston L. Drake, Brainerd, for respondent.

## OPINION

PER CURIAM.

This matter arises from a petition for disciplinary action filed January 13, 1997, and a supplementary petition for disciplinary action filed February 12, 1997,[1] by the Director of the Office of Lawyers Professional Responsibility against respondent Max J. Ruttger, III, alleging that Ruttger engaged in conduct involving misappropriation of client funds, fraud, lying under oath, and lying in response to inquiries from the Director's office during the investigation of this disciplinary matter in violation of the Minnesota Rules of Professional Conduct. The Director seeks to have Ruttger disbarred. A hearing before this court, pursuant to Rule 16, Rules on Lawyers Professional Responsibility (RLPR), was

scheduled to take place on May 5, 1997, to determine if Ruttger should be temporarily suspended from the practice of law pending the final disposition of the pending petitions for disciplinary action. By stipulation with the Director's office, dated April 17, 1997, Ruttger, represented by counsel, withdrew his answers to the petition for disciplinary action and the supplementary petition for disciplinary action. As a result, by operation of Rule 13(b), RLPR, the allegations contained in the petitions are deemed admitted. In addition to stipulating to the withdrawal of his answers, Ruttger agreed to waive his rights under Rule 14, RLPR, and he specifically waived his right to any "further proceedings * * *, including but not limited to a hearing before a referee, further hearings before this Court and the right to contest what sanctions are appropriate." Ruttger also agreed that, without further notice or hearing, this court could enter any order permitted by Rule 15, RLPR. The Director and Ruttger, however, did not stipulate to any particular discipline. Based on the stipulation, this court, by order dated April 24, 1997, ordered Ruttger's immediate temporary suspension and, because of the serious nature of the allegations against Ruttger, the discipline sought by the Director, and the limited record before the court, set a briefing schedule and hearing date to give the Director's office and Ruttger the opportunity to more fully address the appropriate sanctions to be imposed for Ruttger's admitted misconduct.

■ Ruttger has no prior disciplinary history; however, the petition and supplementary petition for disciplinary action allege three counts of professional misconduct against Ruttger. The first count involves the Ruth Hall matter. Ruttger was appointed guardian of the estate of Ruth Hall on August 15, 1991. On September 30, 1994, he was also appointed guardian of the person of Ruth Hall and served in these capacities until he resigned from both guardianships on May 3, 1996. On August 26, 1995, Ruttger made an offer to purchase certain residential property

1. On May 30, 1997, the Director filed a second supplementary petition for disciplinary action, alleging three additional counts of misconduct on the part of Ruttger. The second supplementary petition was not properly before the court at the time of the oral argument in this matter and therefore has not been taken into consideration in determining the discipline to be imposed.

located in Baxter, Minnesota, presumably for the benefit of Ms. Hall. The purchase agreement was signed by Ruttger, as the guardian for Ruth Hall, and specified that the purchaser would obtain conventional financing for the property. Prior to the closing, Ruttger represented to the sellers that he had not yet obtained financing and, as a result, would be paying cash for the property. During the closing, Ruttger gave the sellers a closing statement in which he itemized the debts to be paid on the property, including a Veteran's Administration (VA) first mortgage in the amount of $59,466.07. Ruttger filed the deed transferring the property to the Ruth Hall guardianship on September 23, 1995, deposited $9,233.83 from Hall's funds into his trust account, and used these funds to pay a second mortgage against the property. Ruttger also paid the real estate commission, state deed tax, and the abstract company. However, Ruttger failed, as required by the purchase agreement, to pay the VA mortgage and also failed to file a satisfaction of the VA mortgage. Instead of paying off the VA mortgage, Ruttger continued to pay the monthly mortgage amount, when due, even though he had not signed an assumption of this mortgage. Ruttger also failed to insure the property.

According to Ruttger, his intent was to resell the property to the assistant minister of the Brainerd Episcopal Church on a contract for deed. As Ruth Hall's guardian, Ruttger received monthly payments from the assistant minister in the amount of $500. It is unclear whether these payments were for rent or contract for deed payments. On Ruth Hall's 1995 income tax return, Ruttger listed the property as having been sold in September 1995, at a loss of $3,000. However, Ruttger did not enter into a written purchase agreement or contract for deed for the sale of the property, and no documentation exists indicating that a sale of the property ever occurred.

The Director alleges that Ruttger's conduct, as described above, violated Minn. R. Prof. Conduct 1.1, 1.7(b), and 8.4(c). We agree.

■ The second count involves a certificate of deposit, in the amount of $29,000, belonging to Ruth Hall, which matured and was redeemed by Ruttger on January 3, 1996. On January 19, 1996, Ruttger obtained a cashier's check with the proceeds from the certificate of deposit and placed the proceeds from that check into the account of Hailey A. Peterson at the First National Bank of Deerwood. Ruttger had control over the Hailey A. Peterson account. That same day, Ruttger purchased a cashier's check for $19,500, using money from the Peterson account. Without the $29,000 from the Hall certificate of deposit, the Peterson account would not have had sufficient funds to cover this cashier's check. The cashier's check was made payable to "Ernest E. Erickson, Jr., as personal representative of the estate of Ernest E. Erickson, deceased, and John R. Bonner, III, his attorney." The cashier's check was given to the payees in settlement of a lawsuit by Ernest E. Erickson against Ruttger and his wife for landscaping services. Trial of the lawsuit was set to begin on January 19th.

On May 28, 1996, the Director's office asked Ruttger to explain his handling of the proceeds from the Hall certificate of deposit. By letter dated May 31, 1996, Ruttger responded as follows:

> I have received your letter of May 28 and enclosures and have reviewed same. I advise you that I intended to deposit Norwest Bank cashier's check 6813845 into account 293803 at First National Bank of Deerwood to be held pending a court order authorizing further charitable contributions. Inadvertently it was deposited into account 292335[sic]. When this error in [sic] my part was called to my attention, I transferred the proceeds of the additional cashier's check to account 293803 which was then used to purchase an additional certificate of deposit. That together with all other funds has been turned over to Crow Wing County District Court. No loss to any of Ruth Hall's funds has occurred.

On June 4, 1996, Ruttger wrote to the Director's office stating that he had discussed the matter with the First National Bank of Deerwood and that the bank was in the process of correcting the problem. On June

10, 1996, Ruttger sent a corrected bank statement to the Director's office which was signed by a bank officer at the First National Bank of Deerwood. According to the Director's petition, the bank officer was "induced" to provide this corrected statement and has acknowledged that the corrected statement is wrong. Thus, each of Ruttger's responses to the Director's office regarding the Ruth Hall certificate of deposit was false and misleading.

Based on Ruttger's conduct in misappropriating the Hall funds to pay his personal debt, inducing the bank officer to provide false information, and providing false and misleading responses to the Director's office, the Director alleges, and this court agrees, that Ruttger violated Minn. R. Prof. Conduct 8.1(a)(3) and 8.4(c).

■ Finally, the third count arises out of Ruttger's appointment as guardian of the estate of Emelia Lehtinen, a nursing home resident. Ruttger petitioned to be appointed guardian of Ms. Lehtinen's estate on or about April 30, 1990. He was appointed and served in that capacity until Ms. Lehtinen's death on April 10, 1996. On April 17 or 18, 1996, Ruttger wrote a check on the Lehtinen guardianship account in the amount of $30,000 and placed the proceeds from that check into the Hailey A. Peterson account. He then withdrew $29,000 from the Peterson account and purchased a certificate of deposit for Ruth Hall, thereby misappropriating funds from the Lehtinen guardianship account to repay the funds he had misappropriated from Ms. Hall. On May 14, 1996, Ruttger signed and filed an application for informal appointment of administrator of the Lehtinen estate and represented to the probate court that Ms. Lehtinen had a niece in Minneapolis, Minnesota. This representation was false. Ruttger had represented to the probate court in the guardianship petition that Ms. Lehtinen had no known heirs, and the Director's search for the alleged niece has proved fruitless. Therefore, the estate of Ms. Lehtinen should have escheated to the State of Minnesota.

On May 23, 1996, Ruttger filed a final account in the guardianship of Ms. Lehtinen for the period ending at her death. As part of the final account, Ruttger represented that there was a balance of $58,216.77 in the Lehtinen guardianship account. That balance was consistent with the April 9, 1996, bank statement for the account. Ruttger signed the final account under oath, knowing that the $30,000 he misappropriated on either April 17 or 18, 1996, had not been repaid and was therefore not in the account.

At some point, Ruttger was appointed personal representative of the Lehtinen estate, and on or about July 23, 1996, filed an inventory and appraisal. In the inventory, Ruttger represented to the probate court that the cash on deposit in the Lehtinen guardianship account totaled $58,216.77, the same amount he had earlier represented to the court as available upon termination of the guardianship. Ruttger knew that this amount was incorrect, first because the bank statement for the Lehtinen guardianship account, dated July 9, 1996, showed a balance of $23,923.78, and second, because he knew he had not repaid the $30,000 he had misappropriated in April 1996.

On October 10, 1996, Ruttger filed a final account for the Lehtinen estate and a petition for an order of complete settlement and decree of distribution for the Lehtinen estate. In this final account, Ruttger indicated that the Lehtinen estate had $58,216.77 in assets at the commencement of the estate and had a $52,704.27 balance on hand for distribution. Ruttger signed the final account under penalty of perjury, knowing that the October 8, 1996, bank statement for the Lehtinen guardianship account indicated a balance in the amount of $23,661.36 and that the $30,000 he had misappropriated had not been returned. On October 28, 1996, the probate court approved the estate's final account and granted the petition for an order of complete settlement.

On October 10, 1996, Ruttger also filed a petition for an order discharging the personal representative. The petition falsely represented that Ruttger had paid or transferred all of the property of the Lehtinen estate to those entitled to the property when, in fact, the guardianship account was still open and the money in the account had not been distributed. Indeed, the November 12, 1996,

account statement indicated a balance of $23,264.32 in the account.

The Director contends that Ruttger's conduct in knowingly signing and filing false documents with the probate court as described above, as well as his misappropriation of $30,000 from the Lehtinen estate, violated Minn. R. Prof. Conduct 3.3(a)(1), 3.3(d) and 8.4(c). Again, we agree.

■ Because Ruttger is deemed to have admitted the allegations contained in the petition and supplementary petition for disciplinary action, and because we have concluded that Ruttger's conduct violated our rules of professional conduct, the only issue for this court to decide is the appropriate discipline to be imposed. *See In re Olson,* 545 N.W.2d 35, 37 (Minn.1996). In determining the appropriate discipline, we weigh: (1) the nature of the misconduct; (2) the cumulative weight of the disciplinary rule violations; and (3) the potential harm to the public, to the legal profession, and to the administration of justice. *See In re Pyles,* 421 N.W.2d 321, 325 (Minn.1988). Although this court strives to be consistent with its sanctions, whether to order disbarment involves a consideration of the unique circumstances of each case and "each case must be decided on its own facts." *Matter of Hedlund,* 293 N.W.2d 63, 67 (Minn. 1980).

■■ Clearly, Ruttger's admitted behavior constitutes serious misconduct rooted in deceit and dishonesty. Ruttger misappropriated client funds for his personal use, then lied to the probate court and the Director's office in an attempt to keep his misconduct from being discovered. Misappropriation of client funds, by its very nature, harms not only the specific client, but also the public at large, the legal profession, and the administration of justice. We view misappropriation of client funds as "the most serious degree in attorney discipline matters and [which] almost always results in either disbarment or substantial suspension from the practice of law." *In re Strid,* 439 N.W.2d 721, 721 (Minn.1989); *see also In re Isaacs,* 451 N.W.2d 209, 211 (Minn.1990). "[M]isappropriation of client funds usually merits the sanction of disbarment unless the attorney presents clear and convincing evidence of substantial mitigating circumstances which show that the attorney did not intentionally convert the funds." *In re Swerine,* 513 N.W.2d 463, 466 (Minn.1994) (citing *In re LaChapelle,* 491 N.W.2d 17, 21 (Minn.1992)). The record before us in this case does not provide any evidence of any mitigating circumstances which suggest that Ruttger did not intentionally misappropriate and convert, for his own personal use, the Hall and Lehtinen funds and then, by lying to the probate court and the Director's office, attempt to cover-up that misappropriation.

When viewed as a whole, "the cumulative weight and severity" of Ruttger's misconduct compels us to conclude that he must be disbarred. *See, e.g., In re Graham,* 503 N.W.2d 476, 480 (Minn.1993) ("Taken in the aggregate, 'the cumulative weight and severity of these disciplinary rule violations compel disbarment.'") (quoting *In re Jones,* 383 N.W.2d 303, 307 (Minn.1986)). We therefore order that, upon the filing of this opinion, respondent Max J. Ruttger, III is disbarred. We further order that he pay costs in the amount of $900 to the Director of the Office of Lawyers Professional Responsibility.

Disbarred.