In re Petition for DISCIPLINARY ACTION AGAINST Edward F. ROONEY, a Minnesota Attorney, Registration No. 9321X.

No. A04–1959.

Supreme Court of Minnesota.

Feb. 16, 2006.

Patrick R. Burns, St Paul, MN, for Law-
yers Professional Responsibility Board.

Paul C. Peterson, William L. Davidson, Lind, Jensen, Sullivan & Peterson, P.A., Minneapolis, MN, for Respondent Edward F. Rooney.

## OPINION

PER CURIAM.

The Director of the Office of Lawyers Professional Responsibility filed a petition for disciplinary action against respondent Edward F. Rooney, alleging that Rooney misappropriated $27,700 of his clients' funds. Rooney answered and admitted the misappropriation, but offered several mitigating circumstances. After a hearing, the referee concluded that Rooney had violated Minn. R. Prof. Conduct 1.15 (safekeeping of client funds) and 8.4(c) (conduct involving dishonesty, fraud, deceit, or misrepresentation). The referee recommended that Rooney be suspended from the practice of law for 8 months with a 3–year probationary period following his reinstatement, and that he be permanently prohibited from maintaining a client trust account in the future. The Director appealed, disputing the referee's disciplinary recommendation and arguing that disbarment is warranted. We conclude that an 18–month suspension is the appropriate discipline in this case.

Rooney was admitted to the practice of law in Minnesota in October 1972 and has practiced as a sole practitioner since October 1973. Rooney has not previously been the subject of professional discipline.

Rooney's misconduct involves a client trust account that he maintained at M & I Bank in connection with his practice of law. From July 7, 2003, through June 30, 2004, Rooney, without his clients' knowledge or permission, withdrew from his client trust account a total of $27,700 in 17 separate withdrawals ranging in amount from $350 to $4,000. Rooney kept accurate records of these withdrawals and maintained accurate trust account records throughout the period of the misappropriations. Rooney admits that he misappropriated these funds, using them for various personal and business expenses. At the time of the withdrawals, Rooney was not entitled to the funds and knew that he was not entitled to them.

On July 30, 2004, Rooney's client trust account became overdrawn due to his misappropriations. As a result, M & I Bank sent the Director's Office a notice of the overdraft. The Director then contacted Rooney, requesting an explanation of the overdraft. In his response, Rooney admitted that the overdraft was the result of his misappropriation of client funds.

Through four separate deposits into his client trust account, Rooney repaid all of the funds that he had taken. He made the first two deposits, in the amounts of $4,850 and $500, during the period in which he was still misappropriating client funds. His last two deposits into the trust account, made on August 2, 2004, and August 5, 2004, repaid the balance of the $27,700 that he had misappropriated. These final two deposits occurred after M & I Bank had contacted Rooney regarding the overdraft, but before the Director sent his inquiry letter to Rooney.

The referee held a hearing on March 30, 2005. At the hearing, Rooney testified and presented four character witnesses on his behalf. Because Rooney admitted the misappropriation, his evidence at the hearing primarily went to establishing mitigating factors. Rooney testified that his law practice has long been financially unstable because he often takes clients who are unable to pay him. Rooney testified that he experienced serious financial difficulties

in 2003 and that he misappropriated his clients' money because he felt it was the only way to keep his practice afloat. Rooney also detailed numerous personal problems that he suffered during 2003, including his mother's stroke in December 2002 and his subsequent responsibilities as her primary caretaker, his wife's emergency surgery, and his sister-in-law's death from brain cancer. At the hearing, Rooney expressed remorse and apologized for his misconduct.

On April 26, 2005, the referee issued findings of fact, conclusions of law, and a recommendation for discipline. The referee found that Rooney had misappropriated $27,700 in client funds over the span of a year.[1] The referee also found that Rooney had repaid all of the funds taken and had cooperated fully with the disciplinary investigation. In addition, the referee determined that Rooney was suffering from serious personal and financial stress during the time when the misconduct occurred and that, over the course of his legal career, Rooney has made substantial contributions to the community.

The referee concluded that Rooney's conduct violated Minn. R. Prof. Conduct 1.15 and 8.4(c). The referee recommended that Rooney be suspended from the practice of law for 8 months followed by a 3-year probationary period and that he be permanently prohibited from maintaining a client trust account.

The Director appealed the referee's disciplinary recommendation, arguing that Rooney should be disbarred. The Director timely ordered a transcript of the referee hearing, thereby preserving his right to challenge the referee's findings of fact and conclusions of law pursuant to Rule 14(e), Rules on Lawyers Professional Responsibility (RLPR).[2] However, the Director does not actually challenge any of the referee's factual findings.[3]

The Director argues that we should reject the referee's recommendation on discipline and should instead disbar Rooney. The Director contends that the recommended sanction is insufficient to fulfill the purposes of attorney discipline. In addition, the Director argues that the ref-

---

1. Rooney disputes this finding, arguing that the amount misappropriated was instead $22,350. Rooney appears to reach this number by off-setting the amount that he withdrew from the trust account against the amount that he paid into the trust account during the time period of the misappropriations. Essentially, Rooney argues that, after his payment of $4,850 into the trust account in January 2004, the next $4,850 that he withdrew from the account was merely a recouping of his own funds, not a misappropriation of client funds. He applies the same argument to the $500 that he paid into the account in June 2004. This argument is flawed. First, such an argument would suggest that a client trust account may be used by an attorney as a personal bank account in which the attorney's own funds may be stored separately from his clients' funds, a practice clearly prohibited by the Minnesota Rules of Professional Conduct. *See* Minn. R. Prof. Conduct 1.15(a). Second, if Rooney's depos-

its into the trust account were truly an effort to return misappropriated client funds, as he asserts, the money so returned was no longer Rooney's money, and he was not free to later withdraw it. Therefore, the referee's finding that Rooney misappropriated $27,700 is not clearly erroneous.

2. Rule 14(e), RLPR, provides that if either party orders a transcript of the referee hearing, the referee's findings of fact and conclusions of law are not conclusive, and either party may challenge them.

3. Instead, the Director explained at oral argument that he challenges the referee's implicit legal conclusion that the mitigating factors present in this case warrant a sanction less than disbarment. We interpret this argument to be essentially a reiteration of the Director's primary contention that the referee's recommended discipline is inappropriate.

eree incorrectly determined that the existence of several mitigating factors warrants a sanction less than disbarment.

In opposition, Rooney argues that we should adopt the referee's recommended discipline, or a lesser sanction. Rooney contends that the significant mitigating factors in his case, including his lack of prior disciplinary history, his restitution and remorse, his cooperation with the Director's investigation, his attempt to rectify the problems that led to the misconduct, and his substantial community involvement, warrant a sanction less than disbarment. Further, Rooney argues that suspension, rather than disbarment, would be consistent with this court's previous attorney discipline cases involving misappropriation.

■ The only issue before us is the appropriate discipline to impose. While a referee's recommendation for discipline carries great weight, we have final responsibility for determining the appropriate discipline. *In re Edinger*, 700 N.W.2d 462, 467 (Minn.2005).

■ We have established that "[t]he purposes of disciplinary sanctions for professional misconduct are to protect the public, to protect the judicial system, and to deter future misconduct by the disciplined attorney as well as by other attorneys." *In re Oberhauser*, 679 N.W.2d 153, 159 (Minn.2004). When determining the appropriate sanction for attorney misconduct, we consider four factors: "1) the nature of the misconduct, 2) the cumulative weight of the violations of the rules of professional conduct, 3) the harm to the public, and 4) the harm to the legal profession." *Id.* (quoting *In re Singer*, 541 N.W.2d 313, 316 (Minn.1996)). Sanctions are determined on a case-by-case basis after considering both aggravating and mitigating circumstances. *In re Wentzell*, 656 N.W.2d 402, 408 (Minn.2003). Because we strive for consistency in attorney discipline, we look to similar cases for guidance in setting the proper sanction. *See In re Thedens*, 557 N.W.2d 344, 347 (Minn.1997); *In re Wyant*, 533 N.W.2d 397, 401 (Minn.1995).

■ Misappropriation of client funds constitutes serious misconduct that generally warrants disbarment. *In re Olson*, 577 N.W.2d 218, 220–21 (Minn.1998); *see, e.g., In re Vaught*, 693 N.W.2d 886, 891 (Minn.2005); *In re Samborski*, 644 N.W.2d 402, 409 (Minn.2002); *In re LaChapelle*, 491 N.W.2d 17, 21 (Minn.1992). "[M]aintenance of public confidence in the legal profession requires the strictest discipline in misappropriation cases." *In re Austin*, 333 N.W.2d 633, 635 (Minn.1983). Yet, while misappropriation alone may merit disbarment, many of the misappropriation cases in which we have ordered disbarment involved other misconduct in addition to the misappropriation, particularly misrepresentations and noncooperation with the disciplinary investigation. *See, e.g., Vaught*, 693 N.W.2d at 887; *Samborski*, 644 N.W.2d at 405; *In re Ruttger*, 566 N.W.2d 327, 328–31 (Minn.1997).

We have not always disbarred attorneys who have misappropriated client funds. *See, e.g., In re Hanvik*, 609 N.W.2d 235, 242 (Minn.2000); *In re Pyles*, 421 N.W.2d 321, 327 (Minn.1988). "In cases where this court has not imposed disbarment for extensive misappropriation of client funds, substantial mitigating circumstances were present." *In re Weems*, 540 N.W.2d 305, 308 (Minn.1995). However, even in such cases, severe sanctions, typically lengthy suspensions, generally have been imposed. *See, e.g., Pyles*, 421 N.W.2d at 327; *In re Bernstein*, 404 N.W.2d 804, 805 (Minn. 1987).

■ Both Rooney and the Director cite numerous misappropriation cases they feel

are analogous to Rooney's situation to provide us guidance as to the appropriate sanction to impose. But none of these cases is precisely on point. As we have often noted, attorney discipline cases are decided on a case-by-case basis, making the specific factual circumstances of each case particularly important. *See In re Brooks*, 696 N.W.2d 84, 88 (Minn.2005); *see also In re Cutting*, 671 N.W.2d 173, 174 (Minn.2003). In the cases most heavily relied on by the Director to support disbarment, the attorney's misconduct was more severe than Rooney's misconduct, typically involving active concealment of the misappropriation, failure to cooperate with the disciplinary investigation, fraud, or other misconduct in addition to misappropriation. *See, e.g., Vaught*, 693 N.W.2d at 887 (disbarring an attorney for misappropriation, noncooperation, and false statements to clients); *Samborski*, 644 N.W.2d at 405 (disbarring an attorney for misappropriation, neglect, noncooperation, lack of diligence, unreasonable fees, false statements to a court, and other misconduct); *Ruttger*, 566 N.W.2d at 328–31 (disbarring an attorney for misappropriation, fraud, lying under oath, and false statements to the Director); *In re Shoemaker*, 518 N.W.2d 552, 553 (Minn.1994) (disbarring an attorney for misappropriation, submitting false expense reports, and active concealment of the theft); *In re Olsen*, 487 N.W.2d 871, 872–73 (Minn.1992) (disbarring an attorney for misappropriation, failure to file tax returns, false statements to law partners, and receiving a prohibited loan from a client). Further, in many of the cases in which we have disbarred attorneys for misappropriation the attorney wrongfully took clients' funds with the intent to permanently deprive the clients of their money, while Rooney's misappropriation was temporary and was done with full intent to return the funds taken. *See, e.g., Vaught*, 693 N.W.2d at 888–89; *Sambor-*

*ski*, 644 N.W.2d at 407; *Shoemaker*, 518 N.W.2d at 553.

In many of the cases cited by Rooney, however, the misappropriation was either a single, isolated event or took place over a very short period of time, unlike Rooney's misappropriations. *See, e.g., In re Gubbins*, 380 N.W.2d 810, 810–11 (Minn.1986); *In re Simonson*, 365 N.W.2d 259, 260, 262 (Minn.1985); *In re Shaw*, 298 N.W.2d 133, 134–35 (Minn.1980). In addition, several of the cases that Rooney cites as support for the referee's recommended discipline involved discipline stipulated to by the Director and the attorney. *See, e.g., In re Basiago*, 660 N.W.2d 124, 125 (Minn.2003); *In re Young*, 491 N.W.2d 655, 656 (Minn. 1992). Thus, while our prior cases suggest a range of appropriate discipline for misappropriation—from public reprimand to suspension to disbarment—they do not dictate a particular sanction in this case. *See, e.g., Hanvik*, 609 N.W.2d at 242; *Shoemaker*, 518 N.W.2d at 555; *Simonson*, 365 N.W.2d at 262.

In addition to the nature of the misconduct, we look to the cumulative weight of the violations when determining the appropriate sanction. *Oberhauser*, 679 N.W.2d at 159. In this case, the misappropriation was Rooney's only misconduct. But even standing alone, intentional misappropriation of client funds usually warrants disbarment. *Weems*, 540 N.W.2d at 308. Further, Rooney misappropriated funds on 17 separate occasions over the course of a year, taking money from nearly all of his clients. Thus, Rooney's misconduct was not a single, isolated incident or a brief lapse in judgment.

▮▮▮▮▮▮ This court also considers the harm caused to the public and the legal profession by the attorney's misconduct. *Oberhauser*, 679 N.W.2d at 159. Here, Rooney's clients did not suffer any harm

due to his misappropriations, and he fully restored their funds. However, "[m]isappropriation of client funds, by its very nature, harms * * * the public at large, the legal profession, and the administration of justice." *Ruttger,* 566 N.W.2d at 331. Misappropriation of funds entrusted to an attorney as a fiduciary for his clients is a breach of trust that reflects poorly on the entire legal profession and erodes the public's confidence in lawyers.

Finally, we assess mitigating and aggravating circumstances to determine the appropriate sanction. *Vaught,* 693 N.W.2d at 890. There are several mitigating factors in this case. The parties, however, dispute the impact these mitigating factors should have on the discipline to be imposed. The Director contends that the only mitigating factor that can ever allow an attorney to avoid disbarment in a misappropriation case is a showing that the misappropriation was unintentional—that is, all intentional misappropriation merits disbarment. Because Rooney admits that he intentionally misappropriated client funds, the Director argues that Rooney must be disbarred, despite the existence of other mitigating circumstances.

To support his argument, the Director cites this court's oft-repeated statement: "Disbarment is the usual discipline for attorney misappropriation of client funds except in instances when the attorney presents clear and convincing evidence of substantial mitigating circumstances which show that the attorney did not intentionally convert the funds." *LaChapelle,* 491 N.W.2d at 21; *see also In re Keller,* 656 N.W.2d 398, 402 (Minn.2003); *In re Graham,* 609 N.W.2d 894, 896 (Minn.2000). However, this statement does not preclude our consideration of mitigating factors other than lack of intent because the statement merely indicates that disbarment is the *usual* discipline for intentional

misappropriation, leaving open the possibility that mitigating factors may render the usual discipline inappropriate. *See LaChapelle,* 491 N.W.2d at 21. Indeed, in the case in which this statement originated, we considered mitigating factors other than lack of intent and as a result imposed a public reprimand instead of more severe discipline. *See In re Fling,* 316 N.W.2d 556, 558 (Minn.1982).

 Despite the statement in *LaChapelle,* we frequently have considered mitigating factors other than lack of intent in misappropriation cases and at times have concluded that the presence of such mitigating factors supports the imposition of discipline other than disbarment. *See, e.g., Hanvik,* 609 N.W.2d at 241–42 (imposing indefinite suspension due to lack of prior disciplinary history and substantial restitution); *Pyles,* 421 N.W.2d at 326–27 (imposing indefinite suspension due to significant pro bono work and otherwise exemplary life); *Bernstein,* 404 N.W.2d at 805 (imposing indefinite suspension due to small amount of money taken, full restitution, contrition, and general good character); *In re Heffernan,* 351 N.W.2d 13, 14–15 (Minn.1984) (imposing 3–month suspension due to extensive pro bono work, personal turmoil at the time of the misconduct, and full restitution). Further, the ABA Standards for Imposing Lawyer Sanctions expressly contemplate the consideration of mitigating factors in cases of intentional misappropriation and suggest that mitigating factors may render disbarment an inappropriate sanction for intentional misappropriation. ABA Standards for Imposing Lawyer Sanctions § 4.1 (1991) ("*Absent aggravating or mitigating circumstances* * * * [d]isbarment is generally appropriate when a lawyer knowingly converts client property." (emphasis added)). Thus, we conclude that we are free to consider mitigating circumstances

in cases involving intentional misappropriation of client funds and that in certain cases such mitigating factors may result in a sanction less severe than disbarment. *See In re De Rycke*, 707 N.W.2d 370, 374 (Minn.2006).

There are several mitigating factors in this case: (1) Rooney's lack of prior disciplinary history; (2) his full restitution before the Director contacted him about the overdraft; (3) his remorse; (4) his cooperation with the Director; (5) his good character and significant contributions to the community through pro bono legal work and other volunteer activities, such as law student mentorship and participation on the boards of several nonprofit organizations; (6) the extraordinary stress in Rooney's personal life at the time of the misconduct; and (7) that Rooney is receiving counseling for his problems.

 An attorney's lack of prior disciplinary history is a mitigating factor that can contribute to the imposition of a sanction less than disbarment. *See Hanvik*, 609 N.W.2d at 241. "However, in a case of extensive misappropriation of client funds, the lack of prior discipline is not enough to prevent the imposition of disbarment." *Olsen*, 487 N.W.2d at 875.

 Restitution has also been considered a mitigating factor that may result in a sanction less than disbarment. *See Hanvik*, 609 N.W.2d at 241; *In re Sampson*, 408 N.W.2d 574, 577 (Minn.1987). To mitigate, however, the restitution must not be prompted by fear of getting caught. *In re Stromwall*, 481 N.W.2d 60, 62 (Minn. 1992). Further, restitution does not preclude disbarment for substantial misappro-

priation of client funds. *Olsen*, 487 N.W.2d at 875.

 An attorney's remorse for his misappropriation is also a mitigating factor to be considered by the court. *See Bernstein*, 404 N.W.2d at 805; *Gubbins*, 380 N.W.2d at 812. "Because one purpose of attorney discipline is to protect the public, an attorney's remorse or lack of it is an important factor." *In re Nora*, 450 N.W.2d 328, 330 (Minn.1990) (citation omitted). In addition, cooperation with the Director's Office is a mitigating factor in misappropriation cases that can contribute to a sanction less severe than disbarment.[4] *See, e.g., In re Field*, 506 N.W.2d 631, 631 (Minn.1993); *Gubbins*, 380 N.W.2d at 812.

 An attorney's pro bono legal work, volunteer activities, and good character can also be mitigating factors in misappropriation cases. *See, e.g., Pyles*, 421 N.W.2d at 326; *In re Parks*, 396 N.W.2d 560, 563 (Minn.1986). Nonetheless, community service and other good works generally "do not militate against the imposition of discipline in matters of serious ethical misconduct." *Stromwall*, 481 N.W.2d at 62 (quoting *In re Franke*, 345 N.W.2d 224, 229 (Minn.1984)). *But see Pyles*, 421 N.W.2d at 326–27 (determining that an attorney's exemplary life and pro bono work mitigated enough to avoid disbarment for three instances of misappropriation, false statements to a client, failure to maintain trust account records, handling a tax matter despite a conflict of interest, failure to file a tax return, and misrepresentations to the Director).

---

4. Of course, attorneys are expected to express remorse for their misconduct and to cooperate with disciplinary investigations. In fact, failure to cooperate with a disciplinary investigation is itself misconduct warranting discipline. *In re Flanery*, 431 N.W.2d 115, 119 (Minn.1988). Similarly, an attorney's lack of remorse is an aggravating factor in attorney discipline cases. *In re Stanbury*, 614 N.W.2d 209, 214 (Minn.2000).

In addition, extraordinary stress in an attorney's personal life, such as the serious illness of a loved one, is a mitigating factor that can lead to a sanction less than disbarment in a misappropriation case. *See, e.g., Gubbins,* 380 N.W.2d at 812; *Heffernan,* 351 N.W.2d at 15. Turmoil in an attorney's personal life has been considered a mitigating factor even without proof that the turmoil caused the misconduct. *See Heffernan,* 351 N.W.2d at 15. The fact that an attorney has acknowledged the personal problems that led to his misconduct and has obtained counseling to deal with them can also be a mitigating factor. *See In re Olkon,* 324 N.W.2d 192, 196 (Minn.1982). An attorney's personal financial difficulties, however, do not mitigate in misappropriation cases and can never justify the misappropriation of client funds. *See Parks,* 396 N.W.2d at 563.

Whether the presence of mitigating circumstances will allow an attorney to avoid disbarment for misappropriation depends on the severity of the misconduct and the strength of the mitigating factors. *See Hanvik,* 609 N.W.2d at 241. Thus, in misappropriation cases involving substantial amounts of money, a large number of affected clients, or numerous misappropriations over a long period of time, mitigating circumstances often will not permit the attorney to avoid disbarment. *See, e.g., Shoemaker,* 518 N.W.2d at 555; *Olsen,* 487 N.W.2d at 875–76; *In re Stroble,* 487 N.W.2d at 871. Further, when the misconduct includes other ethical violations in addition to the misappropriation, particularly misrepresentations to conceal the misappropriation, mitigating factors usually will not militate against disbarment. *See, e.g., Shoemaker,* 518 N.W.2d at 555; *LaChapelle,* 491 N.W.2d at 21.

Here, Rooney misappropriated $27,700, taking money from all of the clients who had funds in his client trust account. His misconduct occurred over the span of 1 year and involved 17 separate instances of misappropriation. However, Rooney did not lie to the Director or to his clients or otherwise attempt to conceal his misconduct, and he fully cooperated with the disciplinary investigation. In addition, Rooney's clients suffered no harm from his misappropriations. Further, Rooney intended only to temporarily borrow his clients' funds, not to permanently defraud his clients. *Cf.* ABA Standards for Imposing Lawyer Sanctions § 9.32 (1991) (listing the lack of a dishonest or selfish motive as a possible mitigating factor).

The presence of numerous mitigating circumstances, none of which alone would suffice to avoid disbarment, persuades us that disbarment in this case is not necessary to achieve the goals of attorney discipline. Rooney's sincere remorse, strong evidence of good character, and lack of prior disciplinary history suggest that he is unlikely to commit such misconduct again. Further, Rooney made full restitution of his clients' funds before the Director contacted him regarding the trust-account overdraft. In addition, the extraordinary turmoil in Rooney's personal life at the time of the misconduct, while certainly not an excuse for the misconduct, is a "circumstance[ ] to be considered in imposing discipline." *Heffernan,* 351 N.W.2d at 15.

While we give great deference to the recommendation of the referee and agree with his conclusion that disbarment is not warranted here, we conclude that the 8-month suspension recommended does not adequately take into account the duration and magnitude of Rooney's misappropriation. Balancing the severity of Rooney's misconduct against the numerous significant mitigating factors present in his case, we hold that the appropriate sanction for Rooney's misconduct is an 18-month sus-

pension from the practice of law. An 18–month suspension is a severe sanction that reflects the seriousness of the misconduct in this case and conveys to attorneys and the public the message that misappropriation, even temporary misappropriation, will not be tolerated. Moreover, an 18–month suspension falls squarely within the range of appropriate discipline for misappropriation set by our precedent. Accordingly, we order that:

1. Respondent Edward F. Rooney is suspended from the practice of law for 18 months, commencing 1 week from the date of this decision;

2. Upon readmission, Rooney shall be placed on supervised probation for a period of 3 years;

3. Rooney is permanently prohibited from maintaining a client trust account in the future. Rooney's client trust account shall be maintained by an outside accountant or a licensed attorney.

Eighteen-month suspension ordered.

GILDEA, J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.