IN RE Petition for DISCIPLINARY AC-
TION AGAINST Jeffrey D. UPIN, a
Minnesota Attorney, Registration No.
0152924.

A17-1541

Supreme Court of Minnesota.

Dated: December 13, 2017

## ORDER

The Director of the Office of Lawyers
Professional Responsibility has filed a peti-
tion for disciplinary action alleging that
respondent Jeffrey D. Upin has committed
professional misconduct warranting public
discipline by failing to safeguard and mis-
appropriating client funds. *See* Minn. R.
Prof. Conduct 1.15(a), 8.4(c).

The parties have filed a stipulation for
discipline. In it, respondent waives his pro-
cedural rights under Rule 14, Rules on
Lawyers Professional Responsibility
(RLPR); waives his right to answer; and
unconditionally admits the allegations in
the petition. The parties jointly recom-
mend that the appropriate discipline is a 1-
year suspension, effective 14 days from the
date of this order, with no right to petition
for reinstatement for at least 8 months.

"We consider four factors when deter-
mining the appropriate discipline: 1) the
nature of the misconduct, 2) the cumula-
tive weight of the violations of the rules of
professional conduct, 3) the harm to the
public, and 4) the harm to the legal profes-
sion." *In re Fairbairn*, 802 N.W.2d 734,
742 (Minn. 2011) (quoting *In re Albrecht*,
779 N.W.2d 530, 540 (Minn. 2010)) (inter-
nal quotation marks omitted). "We also
weigh 'both the aggravating and the miti-
gating circumstances of the particular
case' and examine 'similar cases in an ef-
fort to impose consistent discipline.'" *Id.*
(quoting *Albrecht*, 779 N.W.2d at 540).

Respondent's misconduct is extremely
serious. "Misappropriation of client funds
constitutes serious misconduct that gener-
ally warrants disbarment." *In re Rooney*,
709 N.W.2d 263, 268 (Minn. 2006). But
"[w]e have not always disbarred attorneys
who have misappropriated client funds."
*Id.* "In cases where this court has not
imposed disbarment for extensive misap-
propriation of client funds, substantial mit-
igating circumstances were present." *In re
Weems*, 540 N.W.2d 305, 308 (Minn. 1995).
"However, even in such cases, severe sanc-
tions, typically lengthy suspensions, gener-
ally have been imposed." *Rooney*, 709
N.W.2d at 268.

The Director acknowledges that "misap-
propriation of client funds warrants dis-
barment absent substantial mitigating fac-
tors." She maintains, however, that four
factors justify a sanction other than dis-
barment: (1) respondent's conduct was a
single isolated incident reflecting a brief
lapse of judgment; (2) no clients suffered
direct financial loss; (3) respondent is truly
remorseful; and (4) respondent was not
motivated by personal benefit or gain. In
light of these factors, the Director asserts
that a 1-year suspension "is sufficient to
protect the public and the judicial system
while still serving as a deterrent of future
misconduct."

Not all of these factors, however, are
actually mitigation. Some, such as the lack
of harm to clients and the isolated nature
of the misconduct, are a part of the initial
analysis of the appropriate discipline. *See
In re Bonner*, 896 N.W.2d 98, 110 (Minn.
2017) (indicating that a lack of harm to
clients goes to the harm caused to the
public and is not a mitigating factor); *cf. In
re Fru*, 829 N.W.2d 379, 390 n.7 (Minn.
2013) (stating that "we generally take the
fact that an attorney has committed multi-
ple acts of misconduct into account when
considering the cumulative weight of an

attorney's disciplinary violations" rather than as a separate aggravating factor). Nevertheless, we agree that under the circumstances of this case, disbarment is not required.

As to the nature of the misconduct, respondent has admitted to misappropriating $40,000 in client funds in two transactions, 5 days apart, under circumstances that suggest he made a single decision to use client funds to allow his employer to meet its payroll obligations. Respondent, who was the chief operating officer at his law firm and was responsible for overseeing payroll, had no ownership interest in the firm. Respondent restored the misappropriated funds within approximately 1 month. Still, respondent's misconduct was serious in nature.

As the Director has noted, in determining the cumulative weight of the violations, "we distinguish 'a brief lapse in judgment' or 'a single, isolated incident' of misappropriation from multiple instances of misappropriation occurring over a substantial amount of time or involving significant amounts of money." *Fairbairn,* 802 N.W.2d at 743 (quoting *In re Wentzel,* 711 N.W.2d 516, 521 (Minn. 2006)). Respondent's misconduct in this case, despite involving two acts of misappropriation separated by five days, was isolated.

Moreover, the misappropriation did not harm any clients, which is an important consideration in determining the appropriate discipline. *See, e.g., Rooney,* 709 N.W.2d at 269-70. Nevertheless, we acknowledge that "misappropriation of client funds by its nature harms the public at large and the legal profession, because it betrays the trust the client places in an attorney." *In re Tigue,* 900 N.W.2d 424, 432 (Minn. 2017).

As to the other considerations cited by the Director in support of the stipulation, remorse is a proper basis for mitigation.

*Fairbairn,* 802 N.W.2d at 745-46; *Rooney,* 709 N.W.2d at 271. And we have sometimes identified a lack of selfish motive as a mitigating factor as well. *See Rooney,* 709 N.W.2d at 272 (citing ABA Standards for Imposing Lawyer Sanctions § 9.32 (1991) (listing the lack of a dishonest or selfish motive as a possible mitigating factor)). We note, however, that even if respondent lacked an obvious selfish motive in misappropriating the funds, respondent benefitted, at least in part and indirectly, from his misconduct: the misappropriation presumably allowed him, as well as others, to receive their normal payroll checks.

We retain the ultimate responsibility for determining the appropriate discipline. *In re Eskola,* 891 N.W.2d 294, 298 (Minn. 2017). The purpose of discipline for professional misconduct is not to punish the attorney but to protect the public and the judicial system and to deter future professional misconduct. *In re Plummer,* 725 N.W.2d 96, 98 (Minn. 2006). Although we agree with the Director that the facts of this case do not require disbarment, we believe the recommended discipline stipulated to by the parties is inadequate to protect the public and the judicial system and to deter future misconduct. Instead, we conclude that the appropriate disposition is an 18-month suspension, followed by 2 years of probation. *See, e.g., Fairbairn,* 802 N.W.2d at 743-48 (imposing an 18-month suspension, followed by 3 years of probation and a permanent prohibition on being an authorized signatory on client trust account, for six acts of intentional misappropriation totaling $144,000 and two acts of unintentional misappropriation over 13 months, when substantial mitigating factors were present).

Based upon all the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT:

1. Respondent Jeffrey D. Upin is suspended from the practice of law, effective 14 days from the date of the filing of this order, with no right to petition for reinstatement for 18 months from the effective date of the suspension.

2. Respondent may petition for reinstatement under Rule 18(a)-(d), RLPR. Reinstatement is conditioned on successful completion of the written examination required for admission to the practice of law by the State Board of Law Examiners on the subject of professional responsibility, *see* Rule 18(e)(2), RLPR, and satisfaction of continuing legal education requirements, *see* Rule 18(e)(4), RLPR.

3. Respondent shall comply with Rule 26, RLPR (requiring notice of suspension to clients, opposing counsel, and tribunals), and shall pay $900 in costs under Rule 24, RLPR.

4. Upon reinstatement to the practice of law, respondent shall be subject to probation for 2 years. The terms and conditions of respondent's probation shall be determined at the time of his reinstatement, but shall at a minimum include the following:

(a) Respondent shall cooperate fully with the Director's Office in its efforts to monitor compliance with this probation. Respondent shall promptly respond to the Director's correspondence by its due date. Respondent shall provide to the Director a current mailing address and shall immediately notify the Director of any change of address. Respondent shall cooperate with the Director's investigation of any allegations of unprofessional conduct that may come to the Director's attention. Upon the Director's request, respondent shall provide authorization for release of information and documentation to verify compliance with the terms of this probation.

(b) Respondent shall abide by the Minnesota Rules of Professional Conduct.

BY THE COURT:

/s/ _____

David R. Stras
Associate Justice